**In re Stephen Hartwell SILLS, Debtor.**

**No. 99 B 35684.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

July 21, 2000.

Leon E. Lindenbaum, Lindenbaum Coffman Kurlander & Brisky, Ltd., Chicago, IL, for Lindenbaum, Coffman, Kurlander & Brisky, Ltd.

Theodore W. Grippo, Jr., Pembroke & Brown, Park Ridge, IL, for Stephen H. Sills.

Michael T. Hanafan, Cory A. Johnson, Nicholas A. Pavich, Michael T. Hanafan & Associates, Ltd., Chicago, IL, for The Society of Lloyd's.

## MEMORANDUM OPINION

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the Court on the motion of the Society of Lloyd's ("Lloyd's") for sanctions against Stephen Hartwell Sills ("Sills"), a debtor under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (hereinafter the "Bankruptcy Code"), and his attorneys Whitman H. Brisky ("Brisky") and the firm Lindenbaum, Coffman, Kurlander & Brisky (the "Firm"). Following Sills' voluntary dismissal of his bankruptcy petition, Lloyd's seeks an award of costs and attorneys fees, in the amount of $15,573.75, incurred by it in contesting Sills' bankruptcy case. Lloyd's moves for sanctions under 11 U.S.C. § 105(a) and under Federal Rule of Bankruptcy Procedure 9011. For the reasons that follow, the Court finds that sanctions should not be imposed upon either Sills or his attorneys.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 1334. This matter arises both under title 11 and in a case under title 11. Venue lies under 28 U.S.C. § 1409.

### BACKGROUND

This background statement has been compiled from the Sills bankruptcy file as a whole and from the submissions of the parties in regards to the requested sanctions.

#### The Relationship Between Sills and Lloyd's

The Society of Lloyd's operates and regulates Lloyd's of London, the British insurance market that began as a marine insurer over 300 years ago and has now insured everything from Betty Grable's

"million dollar legs" to natural disasters and asbestos disease. Unlike traditional American insurance companies, Lloyd's does not directly insure its customers solely with its assets, nor does it earn profits from premiums and pay claims for losses to insureds under its policies. Rather, through individuals known as Members' Agents, Lloyd's solicits individuals of substantial means to become Names or underwriters. Often, these Names form groups known as Syndicates to insure large risks. When an individual becomes a Lloyd's Name, that individual agrees to put his entire net worth at risk to meet the claims that may be made against him or his Syndicate. In exchange, the Names expect to profit from the premiums paid by the policy-holders and from investment of the Syndicate's capital. The obvious hope is that no policy holder will make a claim and that the Names will reap handsome profits from their investments.

Sills was a Lloyd's Name for the years 1986 through 1992. (Bankruptcy Petition Schedule F). He claims that his investment in Lloyd's has been a "disaster by any objective standard." (Sills Memo at p. 2). He claims that, to date, he has paid Lloyd's approximately $140,000. (Memorandum of Stephen Hartwell Sills in Opposition to Lloyd's Motion for Sanctions (hereinafter the "Sills Memo") at p. 2). Other than asserting that "the financial disaster was one of which [he] was entirely innocent," (Sills Memo at p. 2), Sills offers no explanation of what the nature of the disaster was or how it came about.

Sills was one of the defendants in *The Society of Lloyd's v. Berkos, et al.*, No. 99 C 2651, filed in the United States District Court for the Northern District Of Illinois. The *Berkos* case commenced when Lloyd's filed for Registrations of Foreign Money Judgments against Sills and several other Lloyd's Names against whom judgments had been entered in English courts. The judgment against Sills (the "English Judgment") was in the approximate amount of $213,618, but it has been accruing interest since its entry on March 11, 1998. Sills estimates that the English Judgment now amounts to approximately $250,000, including interest and costs.

### The Sills Bankruptcy Filing

On October 29, 1999, the District Court granted judgment on the pleadings in Lloyd's favor in the *Berkos* case. On November 16, 1999, the District Court entered final judgment against Sills and other *Berkos* defendants. Also on November 16, 1999, Sills and several other *Berkos* defendants filed a notice of appeal to the Seventh Circuit Court of Appeals. The next day, November 17, 1999, Sills filed his Chapter 7 petition. Sills was not required to post a *supersedeas* bond for the *Berkos* appeal because he was under the protection of the automatic stay imposed by 11 U.S.C. § 362.

On February 29, 2000, this Court entered an order modifying the automatic stay imposed by § 362 for the limited purpose of allowing Sills to pursue his appeal. The appeal is still pending as of this date.

On May 1, 2000, Sills filed a motion to dismiss his bankruptcy case. In that motion, he stated that he sought dismissal because he was unable to give actual notice of the bankruptcy proceedings to any significant portion of the policy holders insured by his Syndicates and because Lloyd's did not wish him to proceed by way of Chapter 7. (Debtor's Motion to Dismiss Under Section 707(a), ¶¶ 5, 10). Lloyd's alleges that Sills sought voluntary dismissal only because the Court dismissed the Chapter 7 case of another *Berkos* defendant, Patrick J. Collins, No. 99 B 31891, as a bad faith filing on April 12, 2000. (The Society of Lloyd's Petition for Award of Sanctions (hereinafter the "Sanctions Motion"), ¶ 3); *see also, In re Collins*, 250 B.R. 645 (Bankr.N.D.Ill.2000) (imposing sanctions on the debtor and his attorneys following the dismissal as a bad faith filing). Lloyd's further alleges that Sills recognized that "his petition presents an even more egregious abuse of the bankruptcy laws." (Sanctions Motion, ¶ 3). On June

13, this Court granted Sills' motion and dismissed his case. On June 15, 2000, Sills posted a *supersedeas* bond for the *Berkos* appeal in the amount of $255,539.77.

*Sills' Debts*

In his petition, Sills scheduled two secured debts. The first, in the amount of $141,081.95, is for a mortgage held by Bank of America FSB on the Chicago condominium (the "Condominium") he owns with his wife, Lyn M. Sills ("Lyn"), as tenants by the entireties. The second is a home equity line of credit with the Harris Bank ("Harris"), good for up to $25,000, on which Sills owes $21,548.39. The line of credit is also secured by the Condominium. Sills reaffirmed the Harris debt within two weeks of filing the Chapter 7 petition. He is jointly liable with Lyn on both debts.

Sills and Lyn are also jointly liable on a $48,267.95 debt to PHH Mortgage Services ("PHH"). They incurred the debt to finance a new driveway for a waterfront vacation home in Lake Geneva, Wisconsin (the "Vacation Home") that Lyn individually has owned since 1985. Sills estimates that the Vacation Home is worth $1 million. The Vacation Home secures the debt, but because Sills has no ownership interest in the Vacation Home, the debt is unsecured to him.

Sills scheduled unsecured debts in the total amount of $459,585.02, including the debt to PHH. The total also includes Sills' debt or debts to Lloyd's, which he schedules at $400,000. There are only two other unsecured debts scheduled in amounts greater than zero. The first is to Ameritech, in the amount of $5,307.07, for Yellow Pages advertising for Sills' business. The second is to the American Names Association (the "ANA"), a group of Lloyd's Names whose purpose is to gather information about Lloyd's and to develop tactics to defend against Lloyd's. *Collins*, * * * * * * * *. The ANA has accumulated and disseminated information on the bankruptcy process to its Names. Sills

scheduled dues owed to the ANA in the amount of $4,750.

*Sills' Assets*

Sills scheduled personal property having a total value of $88,003.32. He claimed exemptions of $52,753.32 in the personal property.

Sills scheduled two pieces of real property: his one-half interest in the Condominium and a one-third undivided interest as a tenant in common in 112 acres of vacant land in Fremont County, Idaho (the "Idaho Property"). Sills valued the Condominium at $225,000 and his half interest in it at $112,500. He scheduled the Condominium as exempt property because he and his wife hold title as tenants by the entireties.

Lloyd's initially objected to Sills' exemptions, alleging that Sills might have transferred the Condominium in tenancy by the entireties for the sole purpose of avoiding creditors, in violation of Illinois law. (The Society of Lloyd's Objections to Exemption Statement of Debtor (the "Objections"), ¶ 4). Lloyd's also objected to Sills' claim that certain investment accounts were exempt as retirement or pension accounts. (Objections, ¶ 9). However, Lloyd's withdrew the Objections on February 22, 2000.

In his schedules, Sills valued his one-third interest in the Idaho Property at $500,000. The Idaho Property is currently listed for sale at the price of $6.3 million, but has been on the market since May 22, 1997. Two offers on the property, one for $6 million and another for $2.76 million, have been made and withdrawn. A third offer, for $2.8 million, was made on March 28, 2000, but was rejected by at least one of the other tenants in common. Sills' interest in the Idaho Property, while illiquid, is non-exempt property, available for payment of his creditors.

On March 14, 2000, and pursuant to 11 U.S.C. § 363, the Court authorized the Chapter 7 trustee to sell Sill's non-exempt personal property, including a boat, a gun, and two cars that Sills keeps at the Vaca-

tion Home, to Lyn, free and clear of all liens, for the sum of $12,500.

*Sills' Income and Expenses*

Sills earns yearly gross income of $156,-000, or $13,000 per month. He nets $8,920 per month after deduction of payroll taxes and a $780 monthly contribution to his 401(k) plan. He scheduled $7,411.75 in monthly expenses. Those expenses include telephone expenses of $400 per month, clubs and recreation at $1,350 per month, and charitable contributions of $700 per month. However, Sills claims to spend a mere $125 per month on food.

## DISCUSSION

Lloyd's argument seems to be that because the Court dismissed the *Collins* case as a bad faith filing, *Collins*, 250 B.R. 645, it should sanction Sills for filing his voluntarily-dismissed petition. Lloyd's asks the Court to infer that Sills voluntarily dismissed his petition because he feared that otherwise his case would also be dismissed as a bad faith filing. In large part, Lloyd's is asking the Court to treat Collins and Sills as fungible.

Lloyd's characterizes Sills' petition as a "bad faith filing" (Sanctions Motion, ¶ 5), but the Court has never so held. Nor has it ever been asked to determine whether Sills filed his petition in bad faith. Sills voluntarily dismissed his bankruptcy case. All that is now before the Court are two issues. The first is whether sanctions should be imposed on Sills or his attorneys for violations of Federal Rule of Bankruptcy Procedure 9011. The second is whether Sills and his attorneys should be sanctioned under either the statutory authority to prevent abuse of process granted in 11 U.S.C. § 105(a) or the Court's inherent powers to sanction arising from the same statutory section.

*Rule 9011*

■ Federal Rule of Bankruptcy Procedure 9011 provides in pertinent part:

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. . . .

Fed. R. Bankr.P. 9011(b).

Unlike the *Collins* petition, Sills' bankruptcy filing is not sanctionable for improper purpose under Rule 9011(b)(1). Collins filed a legally frivolous petition for the improper purpose of delaying and harassing Lloyd's, and attempted to manipulate the bankruptcy system to avoid paying a single, disfavored creditor. If Collins had received a bankruptcy discharge, he would have retained more than $2 million in personal wealth, while receiving a discharge of his $525,000 debt to Lloyd's resulting from the *Berkos* judgment. Sills, on the other hand, filed knowing that his most significant asset, the one-third interest in the Idaho Property, would become property of the estate and would be liquidated for the benefit of his creditors, including Lloyd's. Even if sold at Sills' seemingly lowball valuation of $500,000, the Idaho Property would have yielded sufficient funds to pay all of Sills' unsecured debts, including the *Berkos* Judgment, in full.

The biggest similarity between Sills and Collins is that during the pendency of their respective bankruptcies, each was allowed to proceed with the *Berkos* appeal without posting what has turned out to be a sub-

stantial *supersedeas* bond.[1] This was one of many factors the Court considered in sanctioning Collins and his attorneys. If Collins' filing had succeeded, Collins would not only have evaded the *supersedeas* bond, but the underlying debt as well, while retaining almost all of his wealth. Sills may have evaded the *supersedeas* bond, but his bankruptcy would have resulted in full payment of the underlying debt.

Where a debtor filed a Chapter 11 petition to delay collection of a state court judgment and avoid posting an appeal bond, both of which she was able to pay, the Ninth Circuit found that her action was sanctionable as "a transparent attempt to use a Chapter 11 petition and the resulting stay as an inexpensive substitute for the bond required under state law." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 831 (9th Cir.1994). Here, however, Sills' filing was not an inexpensive substitute for bond or payment; it would have cost him his most valuable asset, which would have been liquidated to his debts in full.

■ A petition filed as a litigation tactic where the debtor had only one creditor, its available assets could be liquidated outside bankruptcy, and where the bankruptcy filing delayed completion of nonbankruptcy litigation was sanctionable "[g]iven the timing of the bankruptcy, its delay of state court action, and absence of anything to reorganize." *St. Paul Self Storage Ltd. Partnership v. Port Authority of the City of St. Paul (In re St. Paul Self Storage Ltd. Partnership)*, 185 B.R. 580, 584 (1995). Where a Chapter 7 petition served no bankruptcy purpose because the debtor's available assets could be distributed without bankruptcy administration and the filing benefitted only the debtor's principals, the principals were sanctioned for filing to hinder, delay, and frustrate the creditor and further their own interests. *Trizec Colony Square, Inc. v. Gaslowitz*

*(In re Addon Corp.)*, 231 B.R. 385, 390 (Bankr.N.D.Ga.1999). The Collins bankruptcy was sanctionable because Collins had virtually nothing to reorganize; his few non-exempt assets could easily have been distributed without bankruptcy administration. The Sills situation is distinguishable from *Collins, St. Paul,* and *Addon* because Sills had available assets that were more easily liquidated within the bankruptcy framework than without and such a distribution would have benefitted Sills' creditors. This is a proper purpose for filing a bankruptcy petition.

Sills' petition was also warranted by existing law. Unlike *Collins,* Sills did not rely on obscure, discredited cases to establish his right to bankruptcy relief under highly questionable circumstances. The circumstances of Sills' case were that he possessed sufficient, illiquid assets to pay his debts and sought to liquidate them through bankruptcy for the benefit of his creditors. It would be ludicrous to say that an attempt to pay creditors in full is unwarranted by existing bankruptcy law.

*Section 105(a)*

■ "Section 105 grants broad powers to implement the provisions of Title 11 and to prevent an abuse of bankruptcy process." *In re Volpert*, 110 F.3d 494, 500 (7th Cir.1997). The plain language of § 105 empowers bankruptcy courts to sanction conduct that abuses the judicial process and vexatiously multiplies bankruptcy proceedings. *Id.* at 501.

■ When a bankruptcy filing is motivated by a desire to delay a creditor from enforcing its rights in an ongoing dispute, the filing is an abuse of process. *Jones v. Bank of Santa Fe (In re Courtesy Inns)*, 40 F.3d 1084, 1085, 1090 (10th Cir.1994). Section 105(a) empowers bankruptcy courts to punish attorneys who vexatiously multiply the proceedings before them. *Volpert*, 110 F.3d at 500 citing *Courtesy*

---

1. Following the dismissal of his bankruptcy case, Collins was required to post a $300,000 *supersedeas* bond. Sills has now posted a $255,539.77 bond.

*Inns,* 40 F.3d at 1089. Sanctions are justified under § 105(a) where the sanctioning court has clearly found that a litigant "intentionally abused the judicial process in an unreasonable and vexatious manner." *In re Rimsat,* 212 F.3d 1039, 1047 (7th Cir.2000). A case filed for the purpose of delay is also a sanctionable abuse of process. *Hendrix v. Page,* 986 F.2d 195, 201 (7th Cir.1993).

■ The Sills filing was neither vexatious nor abusive. It was not unreasonable or manipulative. The record clearly indicates that Sills filed to liquidate assets and pay his creditors. That is a legitimate goal under the Bankruptcy Code.

■ As all parties repeatedly urged in the *Collins* case, bankruptcy filings must be reviewed on an *ad hoc* basis. *Industrial Insurance Services v. Zick (In re Zick),* 931 F.2d 1124, 1129 (6th Cir.1991). Sills is not Collins and the outcome in *Collins* has little to do with the facts of this case. The motion for sanctions is denied.