### In re AMERICAN TELECOM CORP., Debtor.

No. 03 B 46296.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 21, 2004.

Paul M. Heller, for Movant.

Bert J. Zaczek, Chicago, IL, for Respondent.

## AMENDED MEMORANDUM OPINION on Siemens' "Motion for Assessment of Attorney's Fees"

JACQUELINE P. COX, Bankruptcy Judge.

After the Court granted creditor Siemens Information and Communications Network's ("Siemens") motion to dismiss the Chapter 7 case of debtor American Telecom Corporation ("ATC") and denying the debtor's motion to reconsider the same, Siemens' instant "Motion for Assessment of Attorney's Fees" brought pursuant to Federal Rule of Bankruptcy Procedure 9011 was still before the Court. Specifically, Siemens requested that it be reimbursed for the legal work its attorney performed in response to the debtor ATC's voluntary petition in an amount of $5,500 to be assessed against ATC's attorney.

A federal trial court may retain jurisdiction after the dismissal of a case for the limited purpose of adjudicating Rule 11 (or Rule 9011) litigation, as this Court has done here. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *e.g., Matter of King,* 83 B.R. 843, 845 (Bankr.M.D.Ga. 1988). Motions for Rule 9011 sanctions are "core" proceedings over which bankruptcy courts have referred jurisdiction under 28 U.S.C. § 157(a)-(b)(2)(A) and § 1334(b). *See In re Wulfekuhl,* 267 B.R. 856, 857 (Bankr.W.D.Mo.2001).

### Background and Procedural History

Siemens obtained a judgment of $173,000 for copyright and patent infringement against ATC in the U.S. District Court for the Northern District of Georgia on August 10, 2000, while ATC's antitrust counterclaims against Siemens in the same lawsuit were defeated on a summary-judgment motion. *See Telecomm Tech. Servs. v. Siemens Rolm Communs.,* 150 F.Supp.2d 1365 (N.D.Ga.2000), *affirmed,* 388 F.3d 820 (11th Cir.2004). ATC and several other co-defendants appealed this judgment to the U.S. Court of Appeals for the 11th Circuit, though ATC did not post an appeal bond to stay enforcement of the

money judgment. Consequently, during January 2001, Siemens began collection efforts by registering its foreign judgment in Illinois, where ATC is domiciled. By the time Siemens conducted its citation-to-discover-assets proceeding in 2002, the debtor ATC had not conducted any substantial operations since the end of 2001 and had virtually no assets from which Siemens could collect the judgment. Siemens initiated an additional Illinois collection suit against ATC's two shareholders/principals, the Glubisz brothers, in an effort to pierce ATC's corporate veil under state law. A state court judge subsequently consolidated the two collection suits and set the final trial date for the alter-ego suit to be November 17, 2003. After the attorney for ATC and the Glubisz brothers brought two unsuccessful motions to stay the collection effort until the appeal pending in the 11th Circuit was resolved, he filed this Chapter 7 bankruptcy case for ATC four days before the alter-ego trial. Relying on Seventh Circuit bankruptcy authority, ATC asserted to the Illinois court that the alter-ego action against the Glubisz brothers is an asset of the bankruptcy estate that can only be prosecuted by the Chapter 7 case trustee. The state court judge obliged its request to independently stay the alter-ego trial regardless of whether the automatic stay of 11 U.S.C. § 362(a) applied to the same, thereby giving deference to this Court's interpretation of the automatic stay provisions protecting bankruptcy-estate property.

ATC originally filed the Chapter 7 listing Siemens as its only creditor. Later it asserted that Berry & Leftwich, the law firm representing it in the 11th Circuit appeal, would have a contingent claim as a result of its contingency contract with this firm; it also amended its schedules to reflect the claims of ATC's two insiders, the Glubisz brothers, for accrued and unpaid rent and salary obligations in the amounts of $170,250 and $115,500.

In response to the Chapter 7 filing, Siemens filed a "Revised Motion to Dismiss" the bankruptcy case of ATC and an alternative "Request to Lift Stay" to permit the alter-ego action against the Chapter 7 debtor's two principals to proceed in the Circuit Court of Cook County. Specifically, Siemens contended that "cause" for dismissal was present within the meaning of 11 U.S.C. § 707(a) because ATC had filed the bankruptcy petition in bad faith and for the purpose of hindering and delaying Siemens in what was essentially a two-party dispute.

In its opinion granting Siemens' motion to dismiss, *In re American Telecom Corporation*, 304 B.R. 867 (Bankr.N.D.Ill. 2004), the Court looked to the underlying purposes of corporate Chapter 7 cases and found that they have a very limited purpose: the fair and orderly liquidation of corporate assets for the benefit of creditors. The Court found that administration of the two causes of action—the defeated antitrust counterclaim pending on appeal and the alter-ego action against nondebtor insiders—did not implicate the fair and orderly liquidation of corporate assets to creditors in any way except the most technical sense. That is, depending on the outcome of the appeal, ATC's Chapter 7 was either a no-asset case or an asset case producing a pot a money that did not require bankruptcy administration to distribute. Moreover, the use of § 362(a) in a liquidation case like ATC's is potentially subject to manipulation in favor of the debtor's insiders without any substantial corresponding benefit to noninsider creditors. Thus, the Court found that the case was primarily a tool for thwarting the collection efforts of a single creditor holding a disputed money judgment against an inoperative corporate shell and attempting

to look to the shareholders for judgment satisfaction. Two matters that were inextricably linked had been stayed: (1) the citation-to-discover-assets proceeding stemming from Siemens' $173,000 money judgment and (2) the alter-ego action to collect the same amount from ATC's two principals. Due to the inextricable link, the Court concluded that the replacement of an appeal bond and/or the stay in two different civil actions did not count any more than in those cases in which an appeal-bond substitute in a single matter was an insufficient justification for a bankruptcy case.

ATC brought a motion for reconsideration under Bankruptcy Rule 9023 in response to the Court's "Memorandum Opinion and Order" dismissing its bankruptcy case. ATC contended that the Court made a manifest error of fact in basing its decision on the conclusion that the case involved only one noninsider creditor rather than eight noninsider creditors. It relied on the "Cost Sharing Agreement Regarding Rolm Company Litigation" ("CSA"), a contract to which ATC is a party, to assert the existence of four additional creditors other than the law firm handling the antitrust litigation, Berry & Leftwich. These other creditors, like ATC, had joint contractual obligations to make periodic deposits to a cost trust fund for common litigation expenses and to pay an additional assessment for any expense that was predominantly attributable to a single party's own claim and defense against the Siemens-related entities; ATC's own assessments due the fund totaled at least $31,894.60 in unpaid litigation expenses. Berry & Leftwich and the other four parties to the CSA also had a lien on ATC's antitrust counterclaim against Siemens for the purpose of securing payment of the various costs and expenses. The CSA made the law firm the authorized agent for handling the potential proceeds of the antitrust litigation and distributing them first to satisfy the CSA expense claims that were secured by the same proceeds.

In denying the Rule 9023 reconsideration motion, the Court found that the legal arrangement created by the CSA had been inadequately disclosed at the hearing on the § 707(a) motion to dismiss and that the bankruptcy schedules and creditor lists had never adequately supported the oral-argument assertion that additional creditors existed—even though Siemens had argued all along that the original petition's identification of it as the lone creditor a few days before the alter-ego trial was circumstantial evidence of an improper purpose for the filing. Furthermore, the Court found that the contention involving additional creditors was forfeited the first time it considered the merits of ATC's position on the § 707(a) motion, meaning that the argument was a new post-hearing argument that would not be considered for Rule 9023 purposes.

In denying the Rule 9023 reconsideration motion, the Court further held that even after considering ATC's new argument, the sheer number of creditors created by the CSA did not solve a number of the problems noted in the original decision *American Telecom,* 304 B.R. 867 (Bankr. N.D.Ill.2004). One additional problem was the potential lack of assets for distribution in this particular Chapter 7 case and not the lack of creditors; moreover, the Court noted that the type of asset that may one day exist was not one that would require bankruptcy administration. ATC either had no significant assets to satisfy any of it debts, or it had coming a future judgment fund from which the expenses under the CSA could be subtracted and paid by the law firm acting as a trustee for that fund. In the latter scenario, Siemens' related infringement claim will have been either

defeated or offset by a mutual antitrust liability, and ATC's surplus fund would presumably not require a federal proceeding to apportion between its two shareholders. In fact, the Court found that the addition of other creditors at a late stage of the game highlighted the necessity of such an effort to lend after-the-fact justification to a petition filed to frustrate Siemens' collection action against nondebtor insiders rather than to benefit the creditor body. The nondebtor insiders' desire for a postponed and centralized forum bringing together all potential alter-ego plaintiffs and all of their assets should be satisfied with the financial disclosures required for an "individual" Chapter 7 case rather than through a corporate filing having very little to do with an actual liquidation of such corporation. Finally, the Court concluded that ATC's concern that Siemens would execute on and purchase the antitrust counterclaim at a sheriff's sale was overstated, at least inasmuch as an Illinois court would be required to issue a turnover order that essentially names Siemens as both the plaintiff and the defendant in the same lawsuit. The conclusion was based on the fact that under Illinois law, turnover is a discretionary remedy, not a mandatory one, so the feasibility, fairness, and practicality of the resulting claim transfer would have to be considered by the state court. Moreover, ATC's option to post a supersedeas bond staying enforcement of the $173,000 judgment in the Georgia federal district court lawsuit also mitigated this concern.

As a cross-motion to ATC's unsuccessful Rule 9023 motion for reconsideration, Siemens interposed the instant motion for Rule 9011 sanctions in the form of attorneys' fees, the motion the Court addresses in this opinion.

### Discussion and Analysis

■ The dismissal of a Chapter 7 case under 11 U.S.C. § 707(a) as a result of a "bad faith" bankruptcy filing does not automatically mean that sanctions will be imposed on the filer's attorney. *See In re Collins*, 250 B.R. 645, 656 (Bankr.N.D.Ill. 2000). Rather, the Court must closely examine both the context of the case and the various legal bases for sanctions. *E.g., Insurance Ben. Administrators v. Martin*, 871 F.2d 1354, 1359 (7th Cir.1989). Here, Siemens requests sanctions for ATC's allegedly abusive or frivolous bankruptcy petition under Bankruptcy Rule 9011, which provides in pertinent part as follows:

(a) Signing of papers

Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name....

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reason-

able opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or

belief.

(c) Sanctions

(1) How initiated

(A) By motion

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

(B) On court's initiative....

....

(3) Order

When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

Fed. R. Bankr.Pro. 9011. Federal Rule 11 and Bankruptcy Rule 9011 are unlike typical fee-shifting statutes that are exceptions to the "American Rule" based on who ulti-

mately prevails in the litigation of specific types of statutory claims. *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 931–32 (7th Cir.1989); *see In re TCI, Ltd.,* 769 F.2d 441, 445 (7th Cir.1985); *In re Collins,* 250 B.R. 645, 667 (Bankr. N.D.Ill.2000). Neither are they causes of action to be plead in a complaint. *See* Georgene M. Vairo, *Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures* 566, 595 (Richard G. Johnson ed., 3d ed.2004). They are instead special rules derived from legal-malpractice and tort law that aim to discourage frivolous litigation by sanctioning specific conduct— namely, the signing and filing of legal papers—that creates problems of abuse and document flooding for federal courts and of delay and expense for a filer's adversary. *See Mars Steel,* 880 F.2d at 932–33, 938; *In re Matus,* 303 B.R. 660, 682 (Bankr.N.D.Ga.2004); Vairo, *supra,* at 707. Thus, their "focus is ex ante (what should have been done before filing) rather than ex post (how things turned out)," *Mars Steel,* 880 F.2d at 932–33, meaning that a settlement on the underlying dispute may not be enough to prevent a court from awarding sanctions, *see* Vairo, *supra,* at 467. The multiple purposes behind these provisions include deterrence, punishment, and compensation of those harmed by rule violations. *See Trizec Colony Square v. Gaslowitz (In re Addon Corp.),* 231 B.R. 385, 389, 391 (Bankr.N.D.Ga.1999). These rules apply to all papers (motions, bankruptcy petitions, and pleadings) signed and filed in federal-court cases as well as to the later advocacy thereof, *see* Bankruptcy Rule 9011(b), but they do not generally include within their scope abusive discovery actions, isolated trial conduct and preparation showing ignorance of the law and facts, and misstatements in oral arguments—at least not if the original paper was interposed properly. *See Martin,* 871 F.2d at 1361–62; *Glatter v. Mroz (In re*

*Mroz)*, 65 F.3d 1567, 1574–76 (11th Cir. 1995) (remanding for determination of whether sanctions for inadequate pretrial investigation should be imposed pursuant to inherent court power rather than Rule 9011); Vairo, *supra*, at 445, 525–26. It similarly does not create a duty to amend legal papers that have been filed so long as the original document passes muster under all portions of the rule; the focus is on the "facts and law known or available" after a reasonable investigation at the time of the challenged document's signing and filing. *Mroz*, 65 F.3d at 1572–73. Although the rule contains a safe-harbor provision during which the troublesome paper may be withdrawn, it does not apply to the filing of a bankruptcy petition due to the petition's immediate and significant impact on creditors.[1] *See Collins*, 250 B.R. at 659.

■■■■ A court may impose sanctions if it finds a violation of any one of the four subdivisions of Rule 9011(b). *See Collins*, 250 B.R. at 661; *e.g., FDIC v. Tekfen Const. and Installation Co.*, 847 F.2d 440, 443–44 (7th Cir.1988). Like the bad-faith exception to the American Rule, the four subdivisions of Rule 9011(b) fall into two general categories: the "frivolousness" clauses (or the "objective component") and the "improper purpose" clause (or the "subjective component"). *Collins*, 250 B.R. at 661–66; *see Mars Steel*, 880 F.2d at 931–32; *Martin*, 871 F.2d at 1357–58; *In re TCI Ltd.*, 769 F.2d 441, 445–46 (7th Cir.1985).[2] The former category, corresponding to Rule 9011(b)(2)-(4), requires that a party's attorney must perform a reasonable preliminary investigation of the facts and the applicable law before filing a paper in federal court. The latter catego-

ry, corresponding to Rule 9011(b)(1), prohibits the filing of a pleading for an improper motive such as delay, harassment, or causing expense, even if the filing relates to a claim that is otherwise colorable (i.e., objectively reasonable). *See Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988), *overruled on other grounds, Mars Steel*, 880 F.2d 928; *cf. TCI*, 769 F.2d at 445.

### A. The "Frivolousness" Clauses

■■■■ The legal papers an attorney files in any case must be grounded in both a nonfrivolous legal theory and well-founded factual contentions and/or denials that, at a minimum, have a reasonable possibility of having evidentiary support after further investigation and discovery. *See Tekfen Const.*, 847 F.2d at 442; *Collins*, 250 B.R. at 661–62. Because these objectively reasonable inquiries must initially be made, "[m]ere good faith is not enough" to comply with the "frivolousness" clauses of Rule 9011. *Martin*, 871 F.2d at 1359; *Mars Steel*, 880 F.2d at 932; *see Beeman*, 852 F.2d at 211, *overruled on other grounds*, 880 F.2d 928. *But see In re Addon Corp.*, 231 B.R. 385, 389–90 (Bankr. N.D.Ga.1999) (applying an objective standard under the "frivolousness" clause but then focusing only on the facts and law actually known at the time of filing rather than on what a reasonable attorney would or should have known). "Of course, the conclusion drawn from the research undertaken must itself be defensible. Extended research alone will not save a claim that is without legal or factual merit from the penalty of sanctions." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 n. 9 (9th

---

1. In any event, the instant bankruptcy filing was not withdrawn in response to Siemens' attorney's written warning to ATC's counsel, so the provision would not have helped ATC and its attorney anyway.

2. " 'Bad faith' sounds like a subjective inquiry.... Despite its sound, however, 'bad faith' has an objective meaning as well as a subjective one." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

Cir.1986), *overruled on other grounds,* *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

### 1. The Factual Background Precipitating the Chapter 7 Case and Its Relation to Existing Bankruptcy Law

■ This case presented very few important factual disputes, with one big exception: the ultimate issue of ATC's good faith and purpose for filing the Chapter 7 case within the meaning of 11 U.S.C. § 707(a) and Bankruptcy Rule 9011(b)(1). These types of mentality-based factual issues will virtually always be subject to dispute and require the tribunal to make inferences from circumstantial evidence, concessions, and other discernible information. Here, the facts that ATC asserted and denied were either background information not subject to dispute or were ultimate conditions of mind that could depend on the inferences one draws from the underlying facts and circumstances. ATC was entitled to advocate the adoption of more favorable inferences than this Court eventually reached, so no violation of Bankruptcy Rule 9011(b)(3)-(4) occurred.

■ Bankruptcy Rule 9011(b)(2) further requires that a litigant's filings be based on a legal theory that is either warranted under existing law or a good-faith argument for the extension, reversal, or modification of existing law. The Court dismissed the underlying case after it determined that the filing of the Chapter 7 petition was not warranted under existing law, in particular discussing *In re Ripley & Hill, P.A.,* 176 B.R. 596 (Bankr.M.D.Fla. 1994), as the most factually analogous case. *See In re American Telecom Corp.,* 304 B.R. 867, 874–75 (Bankr.N.D.Ill.2004). Several of ATC's attorney's arguments were based on the faulty premise that a corporate Chapter 7 debtor is eligible for a discharge of its debts rather than on the necessary strict-liquidation analysis, which would have revealed that the creditor body in unique cases like this one will end up roughly the same as if no federal intervention had occurred. *See id.* at 870–73. Apparently, no Seventh Circuit case interpreting "cause" or "bad faith" under § 707(a) is directly on point. Nevertheless, would-be debtors should not assume that federal law governing corporate Chapter 7 filings will be written on a clean slate; they should instead consult other nonbinding federal common law in the interest of national uniformity. Here, legal research would have supported and predicted this Court's earlier ruling that this bankruptcy filing was not warranted under existing federal law.

For instance, even though *In re St. Paul Self Storage Ltd. Partnership,* 185 B.R. 580, 583 (9th Cir. BAP 1995), was a Chapter 11 case dismissed for "cause" pursuant to § 1112(b), the factual scenario and the opinion's analysis are strikingly similar to those in this Chapter 7 case in at least four respects. First, the bankruptcy case was in reality a two-party dispute, as the underlying dispute leading up to the bankruptcy filing was a state court case involving a claim and a counterclaim, each of which was the primary financial consideration on each side of the debtor's balance sheet. *See id.* at 582. The state court defendant/counterplaintiff (the bankruptcy "creditor") was also the only creditor who was not an insider or other professional of the debtor partnership and held the largest single claim in the case. *See id.* at 582–83. Second, significant unencumbered, nonliquid assets requiring a centralized sale and distribution for the collective benefit of creditors did not exist in that case, *see id.* at 583, or in this one. Other than the *St. Paul Self Storage* debtor's counterclaim against the creditor in the same

state court action, the only other estate asset was $21,000 in personal property that had been repossessed by the same creditor prepetition. *See id.* at 582–83. As in this case, the asset consisting of the counterclaim against the creditor could just as easily have been resolved in the imminent state court trial of the claim and counterclaim. *See id.* at 583. Third, the debtor there had conducted no business for about three years at the time of filing the bankruptcy case, *see id.* at 581–83, while the debtor in the present case waited about two years. This factual similarity was significant in both cases when considered in light of the great length of inactivity, prior opportunities to file the same petition, and the timing of the eventual petition relative to other pre-petition litigation. The timing similarity also relates to the fourth analogy: the use of the filing as a litigation tactic for the primary benefit of the debtor entity and/or its insiders and for the detriment of the primary creditor. *See id.* at 583–84. In *St. Paul Self Storage,* the state court had recently granted the creditor's summary judgment motion on five of the debtor's nine counts, and the remainder of the case was proceeding to trial. *See id.* at 581. The debtor's general partner was scheduled to appear for a deposition but failed to appear, causing the creditor to bring a discovery motion to compel attendance. *See id.* at 582. The debtor filed its Chapter 11 case the day before the hearing on the discovery motion pending against the debtor's general partner, just as ATC filed its Chapter 7 case four days before the trial to pierce the corporate veil protecting its two shareholders/principals. The bankruptcy appellate panel found that the bankruptcy court had not abused its discretion in dismissing the case and was not clearly erroneous in finding that the case had been filed in bad faith, or, stated differently, for the purpose of "remov[ing] a two party dispute to bankruptcy court to delay and frustrate a creditor." *Id.* at 584.

*In re Addon Corp.,* 231 B.R. 385 (Bankr. N.D.Ga.1999), another similar corporate Chapter 7 filing, is significant because it involved not only a dismissal with prejudice but also an assessment of Rule 9011 sanctions in the form of awarding the creditor attorneys' fees and expenses and ordering disgorgement of the debtor's attorney's fee. *See id.* at 387, 391, 393. The *Addon* debtor was in the business of subleasing portions of its own leased property to small law practices, including one run by the debtor's sole officer. *See id.* at 388. At the time of the Chapter 7 case, the debtor had only three unsecured creditors—the lessor being the only one who was not an insider or an attorney of the debtor—and its only assets consisted of a $2000 bank account and a possessory interest in the leased premises. *See id.* at 388, 390. Prior to the bankruptcy filing, the primary lease held by the debtor had terminated, and the debtor's officer's subtenant law firm had failed to negotiate a new lease with the primary lessor/creditor. *See id.* at 388, 390–91. The lessor/creditor had filed a suit to evict the debtor and its remaining subtenant law firm, and on the same day the court ordered the debtor to pay holdover rent, the debtor's officer filed its Chapter 7 petition. *See id.* at 388, 390. The *Addon* bankruptcy court concluded that the case was being conducted primarily for the benefit of the person controlling the inoperative debtor corporation, as his law firm was a subtenant allowed to remain on the premises longer as a result of the eviction-proceeding delay. *See id.* at 390–91. It further found that the case had more to do with frustrating the lessor/creditor than with the orderly and equitable liquidation of a nominal bank account; the case, in other words, had no legitimate purpose under the Bankruptcy

Code. *See id.* at 390. Accordingly, it rejected the argument that protection of the debtor's possessory interest was a sufficient justification for federal intervention in the dispute. *See id.* The *Addon* court imposed Rule 9011 sanctions due to the inevitable conclusion that the case had been filed for the improper purpose of hindering and delaying a single creditor and was objectively unreasonable. *See id.*

The two Chapter 11 filings of a corporation and its president and eighty percent stockholder also resulted in Rule 9011 sanctions in *Matter of King*, 83 B.R. 843 (Bankr.M.D.Ga.1988), although they could just as well have been Chapter 7 filings. In that case, both debtors were defendants in a franchise suit scheduled for trial three days after the petition date, but they no longer had counsel to represent them once their attorneys withdrew from the case two to three weeks before trial and could not be replaced. *See id.* at 845. This dilemma, while very real and harrowing for the debtors, did not pose any true bankruptcy law concerns, so after they dismissed their bankruptcy cases, the court sanctioned them for using the cases as a tool for stalling the state court trial. *See id.* at 847–48.

The only case law pertaining directly to bad-faith bankruptcy filings that the debtor's attorney cited was *In re Sills*, 250 B.R. 675 (Bankr.N.D.Ill.2000), which is too dissimilar to have aided its arguments on the ultimate § 707(a) issue. In *Sills*, the debtor was an individual and could therefore, unlike ATC, potentially receive a discharge; he nevertheless *voluntarily* dismissed his bankruptcy case once a creditor challenged it. *See id.* at 678. More importantly, Sills had a variety of secured and unsecured creditors, and his nonexempt assets included tangible but illiquid real property that could be more easily distributed to creditors in the bankruptcy

framework. *See id.* at 678, 680. Furthermore, a collective federal proceeding was more clearly appropriate in that case, so the bankruptcy court's refusal to impose Rule 9011 sanctions in that case was sensible.

### 2. Arguments for the Creation of New or Conflicting Authority

■ This Chapter 7 filing being illegitimate under existing bankruptcy law, the only way for the debtor's attorney to have complied with Bankruptcy Rule 9011(b)(2) would be for him to have made a "nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Some of the debtor's arguments might have been construed as good-faith arguments for the modification of existing law if combined with other points and authority. ATC's attorney, for instance, pointed out that under Seventh Circuit authority, the trustee would initially be the only party with standing to prosecute an alter-ego suit against nondebtor insiders, and until abandonment of that action, Siemens did not have standing to litigate the suit in state court. He further advocated allowing the automatic stay to replace the appeal bond in the two-party collection dispute so that the debtor's antitrust claim against Siemens could be free from any possible attempt by Siemens to execute on such claim.

The question is not whether these were permissible arguments or accurate statements. Rather, under § 707(a) of the Code, the important and ultimate question is whether these two justifications standing alone (as they must under the facts of this case) are a *sufficient* trigger for imposing federal bankruptcy intervention on the debtor's opponent in a two-party dispute. Assuming everything went as planned, this Chapter 7 case would have accomplished two things: in one piece of

litigation, ATC would have been allowed to prosecute its appeal of a failed counterclaim without having to post an appeal bond to stay collection on a related claim; in a second piece of collateral litigation against the debtor's insiders, not the debtor itself, such insiders would have benefited from delay and potential forum shopping. To say that these things are permissible events in or collateral effects of a Chapter 7 proceeding is one thing; to say that they are freestanding justifications for imposing the restrictions of the Bankruptcy Code on the same adversary in both those pieces of litigation is another. In terms of potential benefits to the creditor body as a whole, the eventual distribution of ATC's litigation proceeds, assuming there ever are any, would likely be the same in and outside bankruptcy, as explained in two prior rulings. *See also In re St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 583 (9th Cir. BAP 1995);[3] *cf. In re Sills*, 250 B.R. 675, 680 (Bankr.N.D.Ill.2000). At least four published decisions—*King, Addon, Ripley & Hill*, and *St. Paul Self Storage*—indicate that this present situation is not sufficient to trigger a federal interest under Chapter 7 of the Bankruptcy Code; instead, filing a case in this instance is an abuse of a legal privilege for the purpose of gaining tactical advantages in nonbankruptcy litigation.

The main problem under Rule 9011, though, is that the debtor's attorney did not identify or discuss any of these four similar cases pertaining to the ultimate and most important legal issue under § 707(a), and he did not compare any other substantially similar cases, favorable or unfavorable. Therefore, the Court really cannot credit ATC's attorney with a good-faith argument for the modification or reversal of existing law. *See Szabo Food Service v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir.1987) ("Counsel ignore rather than acknowledge the force of existing law, so this case cannot be called an effort to alter the law."); *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1073 (7th Cir. 1987) ("Parties who want to distinguish or alter existing law must acknowledge its force; they may not pretend that the law favors their view and impose on the court or their adversaries the burden of legal research to uncover the basic rule."); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) ("Because Rule 11 is addressed to conduct ... rather than to results, a motion may be sanctionable even though something could have been said in its behalf."); *Beeman v. Fiester*, 852 F.2d 206, 211 (7th Cir.1988) ("[T]he good faith requirement of the third prong of Rule 11 looks to the quality of the argument for the extension of a doctrine, not to the counsel's state of mind."), *overruled on other grounds, Mars Steel*, 880 F.2d 928; *In re Collins*, 250 B.R. 645, 665 (Bankr.N.D.Ill.2000) ("Collins has not argued that existing law should be changed; therefore[,] the Court must consider whether it was clear under existing law that Collins had no chance of success."); Vairo, *supra*, at 705.

■■■ The Court furthermore concludes that ATC's attorney violated Bank-

---

**3.** "Nor does it appear that bankruptcy court supervision of Debtor's liquidation is necessary. Prior to the bankruptcy, Debtor was being pursued by no creditors other than Appellee. Its assets had already been seized by Appellee. To the extent other tangible assets remain to be liquidated, there is no impediment to liquidation outside of bankruptcy.

The filing of the bankruptcy petition has delayed, not hastened, completion of the litigation."
*In re ·St. Paul Self Storage Ltd. Partnership*, 185 B.R. 580, 583 (9th Cir. BAP 1995).

ruptcy Rule 9011(b)(2) by filing a frivolous bankruptcy petition and that a reasonable inquiry into bankruptcy law would have revealed this. If an attorney fails to conduct a reasonable legal inquiry, the rule has been violated even if he holds a good-faith belief that his client is entitled to relief under the law. *See In re Mroz*, 65 F.3d 1567, 1573 (11th Cir.1995).

### B. The "Improper Purpose" Clause

■■■■ This portion of Rule 9011(b) prohibits the filing of a pleading for an improper motive or reason such as delay, harassment, or causing expense, even if the filing relates to a claim that is otherwise colorable or supported by some evidence and legal authority. *See Mars Steel*, 880 F.2d at 932; *Collins*, 250 B.R. at 661–62. Like the tort of malicious prosecution, the focus is on why the nonmovant, here the debtor, filed the legal pleading at issue. *See id.* at 661. As previously mentioned, direct evidence of motive, purpose, and reasoning is hard to come by at hearings, forcing courts to come up with the "objective test for improper purpose" for Rule 9011(b)(1) inquiries. Under this test, the Court looks to "objectively ascertainable circumstances that support an inference" that the nonmovant's purpose for filing a paper was improper within the meaning of Rule 9011(b)(1). *Collins*, 250 B.R. at 662, 664; *see Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988), *overruled on other grounds, Mars Steel*, 880 F.2d 928.[4]

Several of the details that were troublesome for the debtor in the *Collins* application of the "objective test for improper purpose" are problematic for ATC and its attorney, as well. In both cases the debtor desired to prosecute an appeal without posting a *supersedeas* bond; both debtors had a protracted dispute with one primary unsecured creditor, who was prevailing in recent litigation; and both debtors strategically filed a Chapter 7 case shortly before a significant legal event such as a trial or a judgment entry. *See Collins*, 250 B.R. at 662, 664. A desire to delay Siemens and possibly find a more favorable forum for the related alter-ego suit rises to an improper purpose for filing the case in spite of the fact that ATC wants the veil-piercing action to proceed in the bankruptcy court. This is so because the problem is not that ATC's insiders want to entirely avoid trial, *see also Matter of King*, 83 B.R. 843, 847–48 (Bankr.M.D.Ga.1988); the problem is that they want a delayed trial (which the state court judge had refused to grant) in a potentially more favorable bankruptcy forum without presenting a factual scenario that truly implicates the policies justifying use of such alternative forum. Other indicia tend to negate the possibility that a proper, alternative bankruptcy-related purpose for this Chapter 7 actually exists: namely, the fact that the debtor had no operations for the two years leading up to the sudden decision to liquidate the corporation and the fact that the case is either a no-asset case or an asset case in which the remaining noninsider creditors will have a lien on the proceeds of the only asset (as explained in prior rulings).

More important than the similar Rule 9011 situation in *Collins*, though, is that the Court essentially decided that this Chapter 7 case had been filed for an improper purpose when it issued its dismissal ruling on February 3, 2004. A close review of the decision reveals the basic conclusion that the case, having no discernable relationship to any true bankruptcy

---

4. The Seventh Circuit has gone so far as to say that a finding of actual "[s]ubjective bad faith or malice is important only when the suit is objectively colorable," *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985), which the Court has already determined this case is not.

policies, had been used as a litigation tactic to frustrate and delay the debtor's opponent in a two-party dispute. *See In re American Telecom Corp.*, 304 B.R. 867, 873–74 (Bankr.N.D.Ill.2004). It would be inconsistent to backtrack and now say that the debtor's purpose in filing the case was consistent with the intended purposes of the Bankruptcy Code.

The Court concludes that ATC and its attorney violated Bankruptcy Rule 9011(b)(1) by filing this Chapter 7 case to delay, frustrate, and cause expense to Siemens.

### C. Determining the Appropriate Sanction

▬▬▬ The remaining undecided issues include whether to impose sanctions and, if so, what kind to impose on whom. We begin with the relevant portion of Rule 9011:

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) How Initiated . . . .

(2) Nature of sanction; limitations

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2). . . .

Fed. R. Bankr.Pro. 9011(c). Under the current version of the rule, sanctions are no longer mandatory if subsection (b) has been violated. They are now discretionary, *see Matter of Generes*, 69 F.3d 821, 827 (7th Cir.1995); *contra In re Addon Corp.*, 231 B.R. 385, 389 (Bankr.N.D.Ga. 1999), but may be imposed if just one of its four requirements has been transgressed, *see Beeman v. Fiester*, 852 F.2d 206, 208–09 (7th Cir.1988), *overruled on other grounds, Mars Steel*, 880 F.2d 928; *Collins*, 250 B.R. at 661. Among the arsenal of sanctions are fines payable to the court clerk, an award of attorneys' fees and costs to the sanctioned party's opponent, an order to disgorge fees paid to the sanctioned attorney, an injunction prohibiting specific types of future filings, mandatory legal education, stricken pleadings, referrals to disciplinary bodies, and reprimands that are on or off the record. *See generally Insurance Ben. Administrators v. Martin*, 871 F.2d 1354, 1359 (7th Cir.1989); *Addon*, 231 B.R. at 391–93; *Collins*, 250 B.R. at 659; Vairo, *supra*, at 522, 566–74. Considerations the Court may make in choosing among these sanctions are the expenses the creditor incurred; the multiple Rule 9011 purposes of punishment, deterrence, and compensation; the severity of a violation; any contribution to the resultant delay caused by the movant; the nonmovant attorney's and represented party's legal experience and history; and, if the offender raises the issue, his ability to pay sanctions. *See Matter of King*, 83 B.R. 843, 848 (Bankr.M.D.Ga.1988); *Addon*, 231 B.R. at 391; Vairo, *supra*, at 530–31, 556–57, 704, 707, 710. Judicial consciousness that a sanction is not more than what is sufficient to discourage future bankruptcy

filings under similar circumstances is also required. *See* Fed. R. Bankr.Pro. 9011(c)(2); *Collins,* 250 B.R. at 667.

Based on the current record, which here does not permit an evaluation of every single potentially relevant factor, the Court will impose sanctions in this case by requiring that Siemens be returned to its position immediately prior to ATC's voluntary petition. *See Mars Steel,* 880 F.2d at 939; Vairo, *supra,* at 553–54, 701 ("The most common sanction [in the Seventh Circuit] has been an award of costs or attorney's fees."), 704. The double violation of the Rule 9011(b) duties, the compensable nature of the fees Siemens incurred, the difficult-to-compensate delay it also experienced, and ATC's attorney's insistence on proceeding in spite of Siemens' optional Rule 9011 warning letter warrant an award of attorneys' fees. *Cf.* Vairo, *supra,* at 553–57. The compensatory, punitive, and deterrent goals of the rule are often easily combined with this type of sanction. *E.g., Addon,* 231 B.R. at 391–92; *see* Vairo, *supra,* at 520, 704, 708. Apparently, the existence of Rule 9011 alone has not had much of a deterrent effect for general and nonbankruptcy practitioners, some of whom apparently hold an all-too-widespread belief that a bankruptcy case is a panacea for state court litigation that has gone awry in spite of Congress's limited intent for the bankruptcy regime. *See, e.g., Matter of King,* 83 B.R. 843, 845 (Bankr.M.D.Ga.1988). This distorted picture of the Bankruptcy Code then spreads to *pro se* litigants. *See, e.g., In re Liptak,* 304 B.R. 820 (Bankr.N.D.Ill.) (Cox, J.), *appeal dismissed,* 2004 U.S. Dist. LEXIS 22747 (N.D.Ill.2004).

■ An award of attorneys' fees and expenses must normally be limited to reimbursement for legal costs that are a "direct result" of the challenged paper, here the Chapter 7 petition, and the types of responses and charges therefor must also be reasonable using a lodestar approach. *See Addon,* 231 B.R. at 391–92; *King,* 83 B.R. at 848; Vairo, *supra,* at 524–27, 530, 701–02 & n. 483. In other words, the award should not be a windfall to the movant and his attorney because such attorney increased the number of hours spent, the hourly charges, and the amount of research in order to inflict extra-judicial punishment on the Rule 9011 violator; nor should the award reimburse the movant for legal fees that it would have incurred in spite of the challenged paper. *See Addon,* 231 B.R. at 391–92; *King,* 83 B.R. at 848; Vairo, *supra,* at 462–64, 530, 546–50. But, neither does the movant's approach to challenging a frivolous paper always require the absolute "least expensive means to resolve [a] dispute." Vairo, *supra,* at 464, 549–50. The rule additionally permits extension of the award to attorneys' fees incurred in pursuit of the ruling on the Rule 9011 motion itself. *See* Fed. R. Bankr.Pro. 9011(c)(1)(A).

■ Siemens' attorney requests $5500 in attorneys' fees, representing 20.0 hours of legal work billed at a rate of $275.00 per hour. About 1.35 hours of this time relates to a creditor's direct response to any improper bankruptcy filing: reviewing the petition and appearing at the first meeting of creditors. The bulk of the time was spent on other legal work necessitated by the improper filing: the drafting, research, and oral-argument preparation for the motion to dismiss the case and related written replies; for the alternative motion to modify the automatic stay; and for the "safe harbor" letter demanding that the case be voluntarily dismissed to avoid Rule 11 sanctions. The Court finds that the amount of time expended on these activities is reasonable both because Siemens' motion was fully contested and because the type of dismissal sought here under

§ 707(a) is not spelled out precisely in the Code, thus requiring case-law research and factual analysis. However, the legal rate of compensation cannot be allowed for filing and delivering pleadings and briefs to the court clerk, the trustee, and the debtor; a paralegal's rate of compensation is required for tasks that are not strictly legal in nature. Siemens' attorney itemized two separate hours for these latter types of tasks, and on two other occasions he lumped document filing and delivery in with other purely legal services. *Cf. In re Addon Corp.*, 231 B.R. 385, 392 (Bankr. N.D.Ga.1999). A fair, total, unlumped estimate for these kinds of services is three hours, to be compensated at a rate of $50 per hour rather than $275 per hour. The total award of attorneys' fees is $4825 (17 times $275 plus 3 times $50). *Cf. King*, 83 B.R. at 848 (sanction of $3700 for attorneys' fees and expenses in similar case); *Addon*, 231 B.R. at 392–93 ($5810 sanction).

■■■■■ The only other determination is the entity against whom the $4825 will be assessed. All signatories to a voluntary petition, including bankruptcy counsel and a corporate debtor's president, subject themselves to Bankruptcy Rule 9011. *See In re Matus*, 303 B.R. 660, 682 n. 19 (Bankr.N.D.Ga.2004); *see also In re Mroz*, 65 F.3d 1567, 1572 (11th Cir.1995). Additionally, sanctions may be imposed against represented parties and other attorneys or firms who have not signed the challenged document but are responsible therefor, *see* Fed. R. Bankr.Pro. 9011(c), although the attorney signing the document is usually the person against whom the sanction should be assessed, unless the client actually misleads such attorney, *see Collins*, 250 B.R. at 660–61 (quoting the 1993 advisory committee notes for Rule 11); *Vairo*, *supra*, at 606–08, 614–17, 639–42 (clients

are not vicariously liable for attorneys' violations), 646–50. Shifting sanctions to a represented party (or its controlling officer) or imposing joint and several liability along with the attorney, however, would require an additional factual finding of separate responsibility for the violation based on the knowledge, participation, and involvement of the party. *See In re Memorial Estates*, 116 B.R. 108, 112 (N.D.Ill. 1990); *Matus*, 303 B.R. at 682 n. 19; *e.g.*, *Collins*, 250 B.R. at 660–61; *Vairo*, *supra*, at 637–47, 654.

. In the case at bar, one of two corporate insiders signed the petition as president; the other corporate insider did not sign the petition; and ATC's bankruptcy attorney signed the petition. Several considerations warrant imposing the $4825 sanction on ATC's attorney alone. First and foremost, Siemens limited its request to an award against the debtor's attorney. *See also Matter of King*, 83 B.R. 843, 846 (Bankr.M.D.Ga.1988). The corporate debtor ATC and those controlling it should not be subject to sanctions because "due process demands more specific notice" that such a debtor will itself need to prepare a defense or be subject to a Rule 9011 sanction separate from its attorney's. *Id.* Second, one of the two described rule violations was a breach of the duty listed in Rule 9011(b)(2), a subsection for which a represented party cannot receive sanctions. *See* Rule 9011(c)(2)(A). Even for the other breached duty in Rule 9011(b)(1), the record contains no evidence from which the Court could distinguish or decipher the corporate insiders' level of responsibility for using the Chapter 7 litigation tactic, and under Rule 9011, the imposition of sanctions on a represented party is understood to be the exception rather than the rule and requires more specific evidence, *see Vairo*, *supra*, at 598, 607,

646–50.[5]

## CONCLUSION

For the foregoing reasons, attorneys' fees in the amount of $4825 are assessed against Bert J. Zaczek, the attorney for Chapter 7 debtor American Telecom Corporation, and in favor of Siemens Information and Communications Network, Inc.

This opinion constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052. A separate judgment consistent with the opinion will be entered in this contested matter in compliance with Bankruptcy Rule 9021.

**5.** Various authorities suggest that an additional evidentiary hearing would be required for a federal court to apportion the sanctions according to "relative culpability," and such a hearing would create a conflict of interest between the attorney and the client to the extent they disagree about fault, thereby creating a need for the client to (1) retain other counsel or proceed *pro se* and (2) potentially forfeit the protections of the attorney-client privilege. *See* Vairo, *supra,* at 598, 639–46, 650, 654. Thus, the apportionment could generate even more "satellite litigation" that increases costs beyond what the Rule 11 motion and original dispute on the merits have already cost the parties. *See id.* at 640–41, 650. The various costs of this type of "satellite litigation" are generally not justified in a $5000 case. *Cf. id.* at 650 (stating that the protection of both the attorney's and the client's respective interests in a $40,000 case may be justified).